**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIN DAWN BLANKENSHIP, individually
and as parent and next friend of G.B. and S.B.,
minors, and SHAYLA BLANKENSHIP,
individually and as parent and next friend
of G.B. and S.B., minors,

      Plaintiffs,

vs.

RICK SNYDER, in his official capacity
as Governor of the State of Michigan,
BILL SCHUETTE, in his official capacity
as Attorney General for the State of Michigan,
JOHN GLEASON, in his official capacity as
Genesee County Clerk, and  JAMES BAUER,
in his official capacity as Administrator of
the Probate Court for Genesee County,

      Defendants.

_____/

Case no.: 14-cv-12221
HON. ARTHUR J. TARNOW
MAG. MICHAEL J. HLUCHANIUK

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE**
**IN OPPOSITION TO MOTION TO DISMISS**

      **NOW COME** Plaintiffs Erin Dawn Blankenship and Shayla Blankenship, by and

through their attorneys, The Law Office of Gregory T. Gibbs and states the following as their

response in opposition to motion to dismiss:

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CONCISE STATEMENT OF ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY.. . . . . . . . . . . . . . . . . . . . . . . . vii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      I.     PLAINTIFFS INDEED HAVE STANDING TO INVOKE THIS
           COURT'S JURISDICTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      II.    DEFENDANTS RELIANCE ON *BAKER V NELSON*, 409 U.S. 810 (1972)
           TO ASSERT THAT PLAINTIFFS HAVE FAILED TO ASSERT A
           SUBSTANTIAL FEDERAL QUESTION IS MISGUIDED.. . . . . . . . . . . . . . . 5

      III.   THE ELEVENTH AMENDMENT DOES NOT AFFORD DEFENDANTS
           IMMUNITY IN THIS MATTER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      IV.   DECLARATORY RELIEF IS AVAILABLE AND APPROPRIATE. . . . . . . . . 9

      V.    DEFENSE OF MARRIAGE ACT AND THE FULL FAITH AND
           CREDIT CLAUSE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      VI.   EQUAL PROTECTION AND DUE PROCESS.. . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## INDEX OF AUTHORITIES

*Bell Atlantic Corp. v. Twombly* ,
    550 U.S. 544, 545 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bishop v. U.S.*,
    962 F.Supp.2d 1252 (N.D. Okla. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bond v. United States*,
    131 S. Ct. 2355, 2364, 180 L. Ed. 2d 269 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bowers v. Hardwick*,
    478 U.S. 186 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Coleman v. Thompson*,
    501 U.S. 722, 759, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). . . . . . . . . . . . . . . . . . 11

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365, 369 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Davis v. Prison Health Servs.*,
    679 F.3d 433, 438 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*DeBoer, et al. v. Snyder, et al.*,
    973 F. Supp. 2d 757 (E.D. Mich. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 7, 8, 13

*FCC v. Beach Communications, Inc.*,
    508 U.S. 307, 313 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*,
    746 F.2d 323 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Heller v. Doe*,
    509 U.S. 312, 320 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Miller's Estate*,
    239 Mich. 455, 214 N.W. 428 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lawrence v. Texas*,
    539 U.S. at 578. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Loving v. Va.*,
    388 U.S. at 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Milliken v Bradley*,
    433 U.S. 267, 288-90 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moore v. Detroit Sch. Reform Bd.*,
    239 F.3d at 368 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nat'l Pride at Work, Inc. v. Governor of Mich.*,
    481 Mich. 56, 748 N.W.2d 524 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Obergefell v. Wymyslo*,
    962 F. Supp. 2d 968 (S.D. Ohio 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*RMI Titanium Co. v. Westinghouse Elec. Co.* ,
    78 F.3d 1125, 1134 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Saenz v. Roe*,
    526 U.S. 489, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999) . . . . . . . . . . . . . . . . . . . . 11

*Shane v. Bunzl Distrib. USA, Inc.*,
    200 F. App'x 397, 401 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.* ,
    551 U.S. 308, 127 S.Ct. 2499, 2509 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Windsor*,
    133 S.Ct. 2675; 186 L.Ed.2d 808 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williams v Illinois*,
    399 US 235, 239 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zablocki v Redhail*,
    434 US 374, 384 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Do Plaintiffs have standing to bring this action?

   Plaintiffs say "yes"

   Defendants say "no"

2. Have Plaintiffs presented a substantial federal question sufficient to invoke this Court's jurisdiction?

   Plaintiffs say "yes"

   Defendants say "no"

3. Are Defendants immune from liability?

   Plaintiffs say "no"

   Defendants say "yes"

4. Is the relief sought by Plaintiffs available against these Defendants?

   Plaintiffs say "yes"

   Defendants say "no"

5. Are Plaintiffs' claims barred by the Full Faith and Credit Clause and the Defense of Marriage Act?

   Plaintiffs say "no"

   Defendants say "yes"

6. Have Plaintiffs failed to state a claim for relief under the Equal Protection Clause?

   Plaintiffs say "no"

   Defendants say "yes"

7. Have Plaintiffs failed to state a claim for relief under the Due Process Clause?

   Plaintiffs say "no"

Defendants say "yes"

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*United States v. Windsor*, 133 S.Ct. 2675; 186 L.Ed.2d 808 (2013)

*Deboer v. Snyder*, 2013 U.S. Dist. LEXIS 98382 ( E.D. Mich. July 1, 2013)

*DeBoer, et al. v. Snyder, et al.*, 973 F. Supp. 2d 757 (E.D. Mich. 2014)

*Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013)

## INTRODUCTION

Despite the Defendants' insistence to link this case to the ongoing matter, *DeBoer, et al. v. Snyder, et al*., 973 F. Supp. 2d 757 (E.D. Mich. 2014), this case is separate and distinct therefrom, both with respect to the facts and the legal analysis that should be applied.  In this case, the Plaintiffs are seeking state recognition of a legally performed out-of-state marriage.

The Plaintiffs in this matter consists of a Genesee County family, headed by a same-sex couple. The couple, Erin and Shayla Blankenship, were married in the State of New York on August 10, 2013. Their marriage is fully recognized by the United States government.  However, upon returning to Michigan, the State of Michigan has refused to recognize them as legally married.

In March 2014 the Court in the Eastern District held in *DeBoer, supra,* that the Michigan Marriage Amendment and its enabling statutes were unconstitutional and could no longer be enforced. That decision was stayed a few days later by the Sixth Circuit Court of Appeals.

Thereafter, when the Blankenships attempted to file adoption petitions allowing each parent to become legal parents to both of their children, they were told that their family was not recognized as valid under Michigan law and that their petition would not be processed because of the stay, a point that Defendants do not dispute.

Plaintiffs moved to intervene in the *DeBoer* litigation, concerned that the stay was being used as a shield to deny continued recognition of their marriage. After weighing the factors, the Sixth Circuit concluded that the motion was untimely, presumably because the case had proceeded to final judgment. Importantly, however, the Sixth Circuit also concluded that even if the motion was timely, it was inappropriate either as a permissible intervention or one of right.

Plaintiffs filed this suit in June, and Defendants have filed a motion to dismiss this action.

1

**LEGAL STANDARD**

Defendants have filed a motion to dismiss this action pursuant to the Federal Rules of Civil Procedure 12(b)(1) and (6).

A motion to dismiss under Fed.R.Civ.P. 12(b)(1) will be granted only when the Court lacks subject matter jurisdiction to hear the claim. *RMI Titanium Co. v. Westinghouse Elec. Co.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A motion pursuant to Fed.R.Civ.P. 12(b)(6) tests the sufficiency of a complaint. In deciding a Rule 12(b)(6) motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief. *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 401 (6th Cir. 2001) (citing *Boyee v Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)).To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A sufficient pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Instead, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) quoting *Iqbal*, 556 U.S. at 678. In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies that may be appended to a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

2

## ARGUMENT

### I.   PLAINTIFFS INDEED HAVE STANDING TO INVOKE THIS COURT'S JURISDICTION

To have standing pursuant to *Lujan v. Defenders of Wildlife*, , 504 U.S. 555, 560 (1992), Plaintiffs must demonstrate that they have suffered a concrete, particularized injury, as a result of the Defendants' illegal conduct, and that the injury is likely to be redressed by a favorable decision.

Plaintiffs in this matter have indeed suffered a concrete particularized injury, specifically the denial of recognition of Erin and Shayla Blankenship's legally performed marriage.  With the denial of recognition of their marriage, a myriad of rights and benefits are lost to them, merely one of them being the inability to seek second-parent adoptions of their children.   The minor children in this matter, G.B. and S.B., have thus suffered by only being permitted to have one legal parent, despite the desires and intentions of all Plaintiffs that each child be granted two legal parents.

Defendant Snyder is Governor of the State of Michigan, and in that position, he is charged with ensuring that the laws of the State are faithfully executed.  Defendant Schuette is Attorney General for the State of Michigan, and he is responsible for ensuring that the laws of the State are faithfully enforced.  While it is true that the Blankenships' adoption paperwork was not specifically provided to either Defendant Snyder or Defendant Schuette to administer, Plaintiffs did attempt to file their paperwork through the appropriate office, which is obligated to follow the law as designated by Defendant Snyder and enforced by Defendant Schuette.   Per the Defendants' directives, Plaintiffs were denied any attempt to seek second-parent adoptions of their children.

Lastly, this matter has been brought forth to seek full recognition of Plaintiffs' marriage, and not specifically in regard to a second-parent adoption.  Clearly, a decision in favor of recognizing

3

Plaintiffs'' marriage would redress the actual injury of lack of recognition.   Such recognition would allow Plaintiffs all the rights and benefits of marriage, including, but not limited to *seeking* second-parent adoptions of their children.[1]   Plaintiffs believe the injury the Court should consider is the inability of the Plaintiffs to seek the rights and benefits of married couples caused by a lack of recognition of their legal marriage.   These rights include, *inter alia*, filing joint state tax returns, rights and obligations under state succession laws, rights accompanied upon dissolution of the marital relationship and indeed the entire bundle of mutual rights and responsibilities that accompanies the recognition of the marital relationship.

Nonetheless, Plaintiffs strongly believe that if they were permitted to file for second-parent adoptions of their minor children, it is very probable that they would receive a favorable outcome. As Defendants note, adoption is dependent on many considerations independent of marital status. In this case, Plaintiffs Erin and Shayla Blankenship have been in a relationship together for over seventeen years.   They both have strong family support.   They are both college and law school graduates.  They have lived in their home together for over twelve years.  They have always equally raised, parented and loved the minor children, and at home, there has never been a designation as to which parent is the legal parent of which child – both children know both adults as their mothers. The children have both lived their entire lives in their mothers' home.   Both Erin and Shayla Blankenship would be consenting to each second-parent adoption.  The adoption of the minor child, S.B., by Plaintiff Shayla Blankenship was finalized in October 2013 without pause, and there have been no substantial changes in Plaintiffs' home since that time.  As there is currently one judge in

---

[1]This is very distinct from a theory that requires any government official to grant an adoption petition, a point recognized in the *DeBoer* litigation.

Genesee County who oversees adoptions, it is very likely that the judge who presided over the adoption of S.B. by Shayla Blankenship would be the same judge that would preside over a second-parent adoption filed by the parties. That judge is familiar with the facts and circumstances, and with the exception of the adult Plaintiffs' marital status, the judge would presumably have no reason to deny second-parent adoptions of the minor children by the adult Plaintiffs in this case.

## II. DEFENDANTS RELIANCE ON *BAKER V NELSON*, 409 U.S. 810 (1972) TO ASSERT THAT PLAINTIFFS HAVE FAILED TO ASSERT A SUBSTANTIAL FEDERAL QUESTION IS MISGUIDED.

In *Baker*, *supra*, the Supreme Court summarily dismissed the plaintiffs appeal of a lower court decision upholding the denial of a same-sex marriage license, in a one-sentence decision "for want of a substantial federal question." Defendants reliance on that decision is misguided. As the Fourth Circuit Court of Appeals has recently explained succinctly

> Summary dismissals qualify as "votes on the merits of a case." *Hicks*, 422 U.S. at 344 (quoting *Ohio ex rel. Eaton v. Price*, 360 U.S. 246, 247 (1959)) (internal quotation marks omitted). They therefore "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam). However, the fact that *Baker* and the case at hand address the same precise issues does not end our inquiry. Summary dismissals lose their binding force when "doctrinal developments" illustrate that the Supreme Court no longer views a question as unsubstantial, regardless of whether the Court explicitly overrules the case. *Hicks*, 422 U.S. at 344 (quoting *Port Auth. Bondholders Protective Comm. v. Port of N.Y. Auth.*, 387 F.2d 259, 263 n.3 (2d Cir. 1967)) (internal quotation marks omitted). The district court determined that doctrinal developments stripped *Baker* of its status as binding precedent. *Bostic*, 970 F. Supp. 2d at 469-70. Every federal court to consider this issue since the Supreme Court decided *United States v. Windsor*, 133 S. Ct. 2675 (2013), has reached the same conclusion. See *Bishop v. Smith*, Nos. 14-5003, 14-5006, 2014 WL 3537847, at *6-7 (10th Cir. July 18, 2014); *Kitchen v. Herbert*, 35 No. 13-4178, 2014 WL 2868044, at *7-10 (10th Cir.

5

June 25, 2014); *Love v. Beshear*, No. 3:13-cv-750-H, 2014 WL 2957671, *2-3 (W.D. Ky. July 1, 2014); *Baskin v. Bogan*, Nos. 1:14-cv 00355-RLY-TAB, 1:14-cv-00404-RLY-TAB, 2014 WL 2884868, at *4-6 (S.D. Ind. June 25, 2014); *Wolf v. Walker*, No. 14-cv-64-bbc, 2014 WL 2558444, at *4-6 (W.D. Wis. June 6, 2014); *Whitewood v. Wolf*, No. 1:13-cv-1861, 2014 WL 2058105, at *5-6 (M.D. Pa. May 20, 2014); *Geiger v. Kitzhaber*, Nos. 6:13-cv-01834-MC, 6:13-cv-02256-MC, 2014 WL 2054264, at *1 n.1 (D. Or. May 19, 2014); *Latta v. Otter*, No. 1:13-cv-00482-CWD, 2014 WL 1909999, at *8-9 (D. Idaho May 13, 2014); *DeBoer v. Snyder*, 973 F. Supp. 2d 757, 773 n.6 (E.D. Mich. 2014); *De Leon v. Perry*, 975 F. Supp. 2d 632, 647-49 (W.D. Tex. 2014); *McGee v. Cole*, No. 3:13-24068, 2014 WL 321122, at *8-10 (S.D. W. Va. Jan. 29, 2014). [*Bostic v Shaefer*, No. 14-1167 _____ F. Supp. 2d _____ (4th Cir.  July 28, 2014)]

Defendants' reliance on *Baker* in this matter is not a position that has found support in any recent federal opinions with respect to this issue.        Further, as the Court held in *Mandel*, *supra*, at 176, summary dispositions like *Baker* are only binding on lower courts "on the precise issues presented and necessarily decided."  Plaintiffs would submit that the facts in *Baker*, *supra*, are sufficiently different than the present case for it to be binding on this Court.

In *Baker*, *supra*, the plaintiffs alleged violations of their Fourteenth Amendment rights to due process and equal protection after being denied a same-sex marriage license in the state of Minnesota.  The first obvious difference with respect to the facts is that Plaintiffs in the instant case were already granted a legal marriage license in the state of New York, and they have already been married.  They not seeking a marriage license, as the plaintiffs were in *Baker*.  Plaintiffs here are seeking state recognition of their already existing, legally performed same-sex marriage.  Another major difference is that at the time the plaintiffs in *Baker* were seeking their marriage license, there was not an express prohibition against same-sex marriages, as there is now in place pursuant to the Michigan Marriage Amendment.  Thus, unlike the circumstances at the time Baker was decided, the

current Michigan Marriage Amendment is intentionally discriminatory against same-sex couples. Therefore, these significant differences with respect to the "precise issues" of the action would alleviate any precedential effect *Baker* may have on this case, even if it was still good law.

### III. THE ELEVENTH AMENDMENT DOES NOT AFFORD DEFENDANTS IMMUNITY IN THIS MATTER.

Pursuant to *Milliken v Bradley*, 433 U.S. 267, 288-90 (1977), Eleventh Amendment immunity does not apply with respect to actions (i) brought against state officials in their official capacity, (ii) claiming violations of the Constitution, and (iii) seeking only prospective relief.

Plaintiffs in the instant matter have brought a suit alleging violations of the Constitution against Defendant Rick Snyder in his official capacity as Governor of the State and against Defendant Bill Schuette in his official capacity as Attorney General of the State. Plaintiffs are only seeking prospective recognition of their out-of-state marriage. This case clearly meets guidelines issued by the Supreme Court in *Milliken*, *supra*, and therefore, Defendants in this case are not protected by Eleventh Amendment immunity.

Defendants suggest that prospective relief is not available to Plaintiffs in light of the stay in effect in the *DeBoer* matter. Although the order issued by Judge Friedman in the *DeBoer* case removed the impediment to recognition of valid, existing same-sex marriages in Michigan at the time of the decision, Plaintiffs have constitutional claims independent of *DeBoer*, which was implicitly recognized by the Sixth Circuit's order denying their attempt to intervene. While Plaintiffs' marriage was rendered valid and recognized by the *DeBoer* decision, Plaintiffs have also argued that the denial of recognition, **with or without the decision in _DeBoer_**, violates the Equal Protection Clause and the

7

Due Process Clause of the Fourteenth Amendment. Indeed, if Plaintiffs' claims hinged on resolution of the *DeBoer* litigation, the Sixth Circuit would have easily concluded that the Blankenships had established "an interest relating to the . . . transaction that is the subject of [*DeBoer*] , and is so situated that disposing of the action may as a practical matter impair or impede" their ability to protect their interest, particularly since the *DeBoer* plaintiffs do not have a valid marriage license and cannot adequately protect their interests on appeal. Similarly, the Blankenships would have had no trouble establishing a common question of law or fact that justified permissive or discretionary intervention. The Sixth Circuit's order is dispositive on this point.

Defendant Snyder is Governor of the State of Michigan, and in that position, he is charged with ensuring that the laws of the State are faithfully executed.  Defendant Schuette is Attorney General for the State of Michigan, and he is responsible for ensuring that the laws of the State are faithfully enforced.  Again, it is true that the Blankenships' adoption paperwork was not specifically provided to either Defendant Snyder or Defendant Schuette to administer, Plaintiffs did attempt to file their paperwork through the appropriate office, which is obligated to follow the law as designated by Defendant Snyder and enforced by Defendant Schuette.  Per the Defendants' directives, Plaintiffs were denied any attempt to seek second-parent adoptions of their children because their marriage is not recognized by the State government. They have also been denied the ability to file joint state tax returns and are denied a host of rights and responsibilities routinely extended to heterosexual marriages, including those out-of-state marriages that are invalid if performed within the State of Michigan. If Defendants Snyder and Schuette were to authorize recognition of Plaintiffs' marriage, then presumably, the offices and agencies directed by them would

8

be required to recognize the marriage as well and Plaintiffs' paperwork could go forward.[2]

## IV.    DECLARATORY RELIEF IS AVAILABLE AND APPROPRIATE

There are two general criteria to consider in determining whether declaratory relief is appropriate: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). In making this determination, the Court should consider five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. [*Id.*]

With respect to the first and second factors, a declaratory judgment would settle the controversy in this matter, and it would serve in clarify the legal relations at issue. Defendants assert first that such a judgment would not be dispositive of Plaintiffs' second-parent adoptions. However, Plaintiffs in this matter are seeking state recognition of their marriage and nothing else through this matter. While ultimately seeking second-parent adoptions of their minor children is one of the rights and benefits being awarded such recognition would allow them, it is far from the only purpose behind this suit. At this point, Plaintiffs and other similarly situated couples are in limbo as to the status of their marriage. While recognized by the federal government, such marriages are not

---

[2]Of course, this is not the sole injury alleged by Plaintiffs and is therefore not the sole basis for prospective relief.

recognized by the State of Michigan, leaving serious questions as to their actual status with respect to tax planning, estate planning, child custody matters, divorce matters and numerous other issues facing families.  Currently, it is impossible for Plaintiffs and those similarly situation to state their marital status without knowing exactly who is asking and why status is being questioned, because for federal purposes, they are married, and for state purposed they are not.  A declaratory judgment forcing the State of Michigan to recognize Plaintiffs' out-of-state marriage would clarify Plaintiffs' legal status.[3]

Defendants again argue that "procedural fencing" is motivating this action, as Plaintiffs are seeking a resolution before the DeBoer matter is finalized.  Yet again, Plaintiffs assert that this matter is separate and distinct from the DeBoer matter, as expressly evidenced by the Sixth Circuit's denial  of Plaintiffs' motion to intervene in that case.

With respect to the fourth factor, whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction, such relief would indeed lessen friction between the federal and state courts, as same-sex marriage is currently recognized by the federal government and by a growing number of states.  The declaratory relief sought in the instant matter would provide clarity and consistency.

Defendants also assert that if Plaintiffs were granted declaratory relief in this matter, it would create friction within the federal court system as well.  This is not true, as all federal courts who have dealt with the issue of same-sex marriage since the Windsor decision have held same-sex marriage bans to be unconstitutional.  Such declaratory relief would be in line with those decisions, including

---

[3]This question will not be resolved by the *DeBoer* litigation, because the *DeBoer* plaintiffs are not married under the laws of any state.

the district court's decision in the *DeBoer* matter.

## V.    DEFENSE OF MARRIAGE ACT AND THE FULL FAITH AND CREDIT CLAUSE

Defendants also assert that the federal Defense of Marriage Act relieves them of any obligation to recognize Plaintiffs' marriage.  But Plaintiffs have not claimed that the refusal to recognize their marriage deprives them of any rights guaranteed by the Full Faith and Credit Clause. This argument also fails to consider that"neither Congress nor a State can validate a law that denies the rights guaranteed by the Fourteenth Amendment." *Saenz v. Roe*, 526 U.S. 489, 508, 119 S. Ct. 1518, 143 L. Ed. 2d 689 (1999). Moreover, "[s]tates are not the sole intended beneficiaries of federalism." *Bond v. United States*, 131 S. Ct. 2355, 2364, 180 L. Ed. 2d 269 (2011).

Federalism also has another dimension, one that "secures to citizens the liberties that derive from the diffusion of sovereign power." *Coleman v. Thompson*, 501 U.S. 722, 759, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (Blackmun, J., dissenting).  Indeed, the *Windsor* decision emphasized that "[s]tate laws defining and regulating marriage, of course, *must respect the constitutional rights of persons*, *see, e.g., Loving* . . . ." Windsor, 133 S. Ct. at 2691 (emphasis added). As other courts have recognized, *Windsor's* citation to *Loving* for this proposition "is a disclaimer of enormous proportions." *Bishop v. U.S.*, 962 F.Supp.2d 1252, 1279 (N.D. Okla. 2014).

To the extent that the federal Defense of Marriage Act remains operative at all, it provides no defense to Defendants' refusal to recognize Plaintiffs' marriage in the execution of their responsibilities under state law.

## VI.    EQUAL PROTECTION AND DUE PROCESS

The Fourteenth Amendment to the United States Constitution provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1.  In this case, Plaintiffs have obtained a valid marriage license from the State of New York, and their family unit is recognized by the State of New York and the federal government. Defendants' enforcement of the Michigan Marriage Amendment and the 1996 marriage statutes, however, deprives them of the fundamental right to remain married and also subjects them to disparate treatment on the basis of sexual orientation, without any rational basis.

### A.   THE FUNDAMENTAL RIGHT TO REMAIN MARRIED

While the right to marry is part of the "fundamental right of privacy" implicit in the Fourteenth Amendment's Due Process Clause,[4] Plaintiffs are already married..  "Under the Equal Protection Clause, courts apply strict scrutiny to statutes that involve suspect classifications or infringe upon fundamental rights." *Moore v. Detroit Sch. Reform Bd*., 239 F.3d at 368. The same analysis applies under the Due Process Clause. See, e.g., *Zablocki*, 434 U.S. at 388.  The liberty protected by the Due Process Clause includes the right to marry and remain married, the right to establish a home, raise children and make personal decisions related to family, life partnerships and education. It also includes protection from unwarranted intrusions by the several states into decisions that are central to personal autonomy and dignity, including intimate relations and family life.

---

[4]*Zablocki v Redhail*, 434 US 374, 384 (1978).

12

Where same-sex couples marry outside of Michigan and then reside in Michigan, a fundamental right is implicated: "the right not to be deprived of one's already-existing legal marriage and its attendant benefits and protections." *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013). The right to remain married is therefore properly recognized as one that is a fundamental liberty interest appropriately protected by the Due Process Clause of the United States Constitution.[5]. As a result of the Michigan Marriage Amendment and the 1996 amendments to Michigan's statutory regulation of marriages performed in other states and foreign jurisdictions, and as a result of the Defendants' execution and defense of those laws, Plaintiffs are subjected to deprivation of their right to remain married without substantial justification. Accordingly, Plaintiffs have stated a claim under the Due Process Clause.[6]

B.   EQUAL PROTECTION AND TREATMENT FOR ALL OUT-OF-STATE SIMILARLY SITUATED COUPLES REGARDLESS OF GENDER AND SEXUAL ORIENTATION

Michigan's constitutional and statutory bans on recognizing valid, out-of-state same-sex marriages have unjustifiably created two tiers of couples: (1) opposite-sex married couples legally

---

[5] The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny any person due process.

[6] Plaintiffs' also assert that their rights to recognition of their legal out-of-state marriage are independent of the outcome of the *DeBoer*. Regardless whether the lower court's decision in *DeBoer* is upheld or reversed, Plaintiffs' are entitled to recognition of their marriage. To treat them differently from opposite-sex couples who are married in other states is a violation of their right to Due Process as well as the Equal Protection Clause. Plaintiffs similarly assert that heightened scrutiny is appropriate in this case because Michigan's refusal to recognize valid same-sex marriages from other states burdens the fundamental right to marriage, the fundamental right to recognition of an existing marriage, and because the laws target a suspect class on the basis of sexual orientation.

13

married in other states; and (2) same-sex married couples legally married in other states. This lack of equal protection of law is fatal, and for that reason Plaintiffs have stated a claim.

In Michigan, heterosexual couples who are first cousins and reside in Michigan cannot obtain a marriage license because cousins of the first degree are not eligible to marry in the state. If those couples travel to another state to obtain a marriage license for the specific purpose of evading the Michigan restriction, they will still be married under Michigan law when they return. *See In re Miller's Estate*, 239 Mich. 455, 214 N.W. 428 (1927). That case involved two first cousins who were legally married in Kentucky. Their only purpose for traveling to Kentucky was to obtain a marriage license and circumvent state law. The Michigan Supreme Court upheld their marriage, finding that their marriage, although prohibited in Michigan, was allowed in Kentucky and was therefore valid there, and so it was recognized as valid in Michigan.

By contrast, Plaintiffs are not married under Michigan law. Even though New York would recognize their marriage, Michigan does not recognize any same-sex marriage, even those marriages that were validly performed in New York. Indeed, Michigan's Supreme Court has held that no government entity can take any action that even acknowledges that Plaintiffs have an intimate relationship that is similar to marriage. *See Nat'l Pride at Work, Inc. v. Governor of Mich.*, 481 Mich. 56, 748 N.W.2d 524 (2008). In that case, the Michigan Supreme Court, which endorses evasive marriages of opposite-sex couples pursuant to Michigan law, held that the language of the amendment prohibiting Michigan from recognizing a "similar union for any purpose" applied to same-sex intimate relationships even if the partners are not married. That meant, in that case, that Michigan universities and schools could not extend domestic partnership benefits to the partners of their gay employees. By treating lawful same-sex marriages differently than it treats lawful

heterosexual marriages (e.g., marriages of first cousins), Michigan law violates the United States Constitution's guarantee that no state shall make or enforce any law which shall deny to any person within its jurisdiction equal protection of the laws. *See Obergefell v. Wymyslo*, *supra*, 962 F. Supp. 2d at 986.

Defendants suggest that sexual orientation is not a suspect classification because it has not yet been recognized as such, relying on *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012).[7]   However, the Court in *Davis* relied on the precedent set by *Bowers v. Hardwick*, 478 U.S. 186 (1986), which was overruled by *Lawrence v. Texas*, 539 U.S. at 578. It also failed to account for *United States v. Windsor*, 133 S.Ct. 2675; 186 L.Ed.2d 808 (2013), which had yet to be decided.  Based on a history of discrimination, sexual orientation should be considered a suspect class, and heightened scrutiny should be applied when evaluating the constitutionality of Michigan's failure to recognize valid same-sex marriages from other states.

Nonetheless, Plaintiffs assert that Michigan cannot provide even a lesser, rational basis for refusing to recognize valid same-sex marriages from other states.  Simply, the State has failed to demonstrate "any reasonably conceivable set of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).  The State has failed to show any "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993).  As the Sixth Circuit has pointed out, animus against homosexuals can never be a legitimate governmental

---

[7]Additionally, *Davis* did not implicate a fundamental right and was premised on the Equal Protection Clause, not Due Process.

15

purpose. *Davis*, 679 F.3d at 438.[8]

While Defendants also suggest that procreation and a preference for child-rearing by opposite couples are legitimate government interests favoring their position, Plaintiffs find this position somewhat ironic in that they are the parents of two children, both conceived and born during the relationship,[9] yet Plaintiffs are aware of many other opposite-sex couples who are in state-recognized marriages despite not having children. Nonetheless, Defendants have failed to show any connection as to how recognizing Plaintiffs' marriage would have any affect whatsoever on the procreation of opposite-sex couples or on the number of children actually raised in homes headed by opposite-sex couples. Defendants' position also ignores the harm to Plaintiffs' children, and other children raised by same-sex couples without the benefits and guarantees of state recognition. These arguments have also been uniformly rejected as a basis for a 12(b)(6) dismissal motion in pending litigation and are the proper subject of a summary judgment motion at a later date.

Defendants have set forth no rational basis whatever for Michigan's ban against marriage equality. At this critical juncture, however, Plaintiffs need only establish a sufficient factual predicate to state a claim for relief. Plaintiffs have clearly stated a claim that can survive a Rule

---

[8]Defendants assert that recognizing Plaintiffs' marriage would be inconsistent with Michigan's traditional public policy in defining marriage as one man and one woman, seemingly missing the point that this action is challenging the constitutionality of that very definition, as it applies to out-of-state marriages. Certainly Michigan is authorized to enact marriage laws defining marriage, but it is not permitted to violate the Fourteenth Amendment when doing so. Further, tradition alone does not provide a rational basis for a law. *Williams v Illinois*, 399 US 235, 239 (1970).


[9]Additionally, Michigan has no legitimate interest in restricting adoption to heterosexuals; it only prohibits same-sex couples from jointly adopting children, not jointly raising them.

12(b)(6) motion.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court **DENY**

Defendants' motion.

Dated: Aug. 28, 2014        By:      /s/ Alec S. Gibbs
                            Alec S. Gibbs (P73693)
                            Law Offices of Gregory T. Gibbs
                            Attorneys for Plaintiffs
                            717 S. Grand Traverse St
                            Flint, MI 48502
                            gibbsale@gmail.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that Plaintiffs' Response and Supporting Brief was served upon counsel of record via the Court's ECF System to their respective email addresses disclosed on the Notice of Electronic Filing on August 28, 2014.

                            By: /s/ Alec S. Gibbs
                            Alec S. Gibbs (P73593)
                            Attorney for Plaintiffs
                            717 S. Grand Traverse Street
                            Flint, Michigan 48502
                            (810) 239-9470
                            gibbsale@gmail.com

17